No. 20892.

FRED KLUTTS *v.* OTIS PARKER AND MONTE VISTA
PRODUCTION CREDIT ASSOCIATION, A CORPORATION
CHARTERED UNDER THE PROVISIONS OF THE
FARM CREDIT ACT OF 1933.
(409 P.2d 275)

Decided December 27, 1965. Rehearing denied January 17, 1966.

RICHARD L. BLOSS, JR., FRANK L. SHAW, for plaintiff in error.

CHARLES R. CORLETT, for defendant in error Monte Vista Production Credit Association.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the plaintiff in error as Klutts, to the defendant in error as the Association, and to another defendant in the trial court against whom judgment by default was entered as Parker. The latter is not a party to this writ of error.

Klutts sued both Parker and the Association, alleging conversion of in excess of 1,000 head of sheep. The trial court found the issues against Klutts and in favor of the Association and entered judgment of dismissal of Klutts' complaint. At the same time default judgment was entered against Parker for the amount of damages prayed for by reason of Parker's conversion of the sheep.

Error is assigned to the conclusions of law in which the trial court applied the doctrine of estoppel against Klutts. It is argued that at least two elements of estoppel are lacking in the undisputed factual situation before the court and that without this error in law by the trial court, the decision in favor of the Association cannot be supported.

For reasons which we will point out in later discussion, we need not determine whether estoppel applies

**596**

to the facts herein. If the judgment finds support in the evidence, we will affirm.

 The evidence was undisputed. Under all of the facts and all of the inferences to be drawn therefrom, the Association is entitled to judgment as a matter of law under what it denominated its "seventh affirmative defense." The same defense is raised here in the Association's Summary of Argument, under paragraph D. And although the trial court made no findings on this particular question, one way or the other, still this court may determine pure questions of law when it is fully warranted and supported by a record which could produce no other result. *Buddy and Lloyd's v. Aurora,* 139 Colo. 152, 337 P.2d 389; *Webb v. Wildcat Ditch Co.,* 67 Colo. 495, 186 Pac. 287.

Klutts entrusted a herd of sheep to Parker under two distinct agreements, both of which were made orally and over the telephone. The first agreement was entered into the latter part of June. The parties agreed that Klutts would ship to Parker at Alamosa 1,069 yearling lambs which Parker was to sell and to remit to Klutts out of the proceeds the fixed sum of $17 a head. Parker agreed to pay for the costs of transporting the sheep from Texas to Colorado and for caring for the sheep until they were sold. In mid-July a similar arrangement was agreed upon with respect to 438 head of older ewes. From the sale of these animals Parker was to remit $12 a head out of the proceeds.

On the first of October, the sheep not having been sold, another agreement was made. Parker was to keep the sheep and care for them all during the winter months. It was further agreed that he could put bucks with the sheep, and from the sale of the spring lambs he could also retain everything in excess of $17 a head for the newborn animals. If the sheep were not sold, they were to be returned to Klutts, and if only part were sold, then those remaining unsold were to be re-

turned to him. All of the proceeds from the wool were to belong to Parker.

A little over a month after the final agreement to winter the sheep had been entered into, Parker applied to the Association for a loan on the sheep. The proceeds of the loan were not paid to Parker; they were budgeted to pay off a loan previously made for hay and were paid out over the winter months in order to keep the sheep fed. The Association took a chattel mortgage on the entire band plus the increase and also on the wool. During the winter the Association paid out an amount in excess of $18,000 for the care of the sheep. In the following year of 1961 Parker abandoned them. In the meantime Parker had sheared the sheep, and instead of selling the wool and applying the proceeds to the Association loan, he secretly stored the wool in Texas. In litigation there, Klutts received a pro-rata share of the wool in the amount of $4,016.21. In September of 1961, the Association foreclosed its chattel mortgage on the sheep, and from the sale thereof it paid off all of the money due it. The balance in excess of $2,000 was remitted to Parker.

After the foreclosure and sale and the remission of funds to Parker, Klutts appeared on the scene for the first time. He claimed ownership of the sheep and demanded an accounting for them at the price of $17 a head for some of the ewes and $12 a head for the others. When the Association refused to pay him, he brought suit in conversion against the Association and Parker.

The trial court in rendering its decision and judgment announced as its conclusions of law the following:

"* * * plaintiff Klutts, by his conduct, both active and passive, clothed Otis Parker with the apparent ownership of the sheep involved and with the manifest and evident concomitant rights to mortgage these animals. The Monte Vista Production Credit Association was justified in believing and acting upon the belief that Parker was the owner of the sheep and had the

right to execute a valid chattel mortgage feed loan. That by his acts and his failure to act, plaintiff Klutts should be and is estopped to deny the validity of the chattel mortgage or the foreclosure thereof and to assert any claim against the defendant Production Credit Association by reason of said chattel mortgage, foreclosure, sale or the distribution of proceeds. * * *"

■ As one of the defenses in the lower court and as one of the arguments asserted here, the Association contends that the agreement between Klutts and Parker at the time of the latter's execution of the chattel mortgage was a partido contract as defined in C.R.S. '53, 8-10-6, which required that it be in writing and that it be recorded in the office of the clerk and recorder of the county in which the livestock is to be kept under the agreement. The section of the statute reads:

"Partido contracts recorded. — No partido or share contract whereby livestock is delivered to be kept on shares for a period of time at the end of which they, or an equal or similar number, or any number thereof are to be returned, whatever the specific terms of said contract may be, *shall be valid,* except as between the parties to said contract, unless such contract be filed or recorded in the office of the county clerk and recorder of deeds of the county *wherein such livestock is to be kept."* (Emphasis supplied.)

■ In determining whether an arrangement concerning livestock comes within the aforementioned statute, this court said in *National Bank of Limon v. Matteson,* 106 Colo. 233, 103 P.2d 487, that a partido contract need not be in any set form and that its character is not varied by the fact that the interest of the one in possession of the livestock is measured in cash. What must be shown is an *interest* in the property by the one to whom the care of the sheep is entrusted.

With regard to the terms of the agreement, which were supplied entirely by Klutts, Parker had: (a) a cash interest in the sheep because he was required to

remit only a set price per head and could keep all moneys in excess of the price established between the parties; (b) he had an interest in the wool, the proceeds from which were to be entirely his; (c) he was given permission to breed the ewes and was given an interest in each of the newborn lambs, from the sale of which he was to retain all of the sales price in excess of $17 a head.

In order for the contract between Klutts and Parker to be valid so as to protect Klutts' ownership except as between the parties themselves, the contract had to be in writing and recorded. It was not. The evidence is undisputed that the search of the records made by the Association was thorough and that there was reliance thereon. The court made as a finding of fact, which we adopt, that there was no way in which the Association could have discovered the interest Klutts claimed in the sheep. To innocent third parties Parker had all indicia of ownership. The reason for the legislation concerning recording partido contracts is to protect bona fide purchasers or encumbrancers such as the Association. They are entitled to rely on the records in making a loan.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SCHAUER concur.