## No. C-459

Steven L. Handen, Sister Lucy Marie Martinez, Sam Arthur Johnson, Elizabeth Karen Johnson, Sam Richard Buhr, Manual Albert Romero, Sister Ramona Jean Corrales, Monica Ann Gonzales, Sister Clarita Marina Trujillo, Alan Eugene Wilson, Ricardo Rivera Cruz, Donald Lloyd Collier, Thomas John McCrossan, Cyprian Joe Ortega, Josef Adolf Benavides, David Thomas Glatter, Robert Salazar, a/k/a Robert John Salazar, Pamela Bullard, Mary Lynn Sheetz a/k/a Mary Magdalynn Sheetz, William Joseph Sulzman v. The People of the City of Colorado Springs

(526 P.2d 1310)

Decided October 7, 1974.

J. Gregory Walta, Walta, Cannon & Gaddis, for petitioners.

Gordon D. Hinds, City Attorney, John T. Bruce, Deputy, for respondents.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

On March 24, 1973, Petitioners were arrested for distributing handbills and displaying picket signs in front of the Safeway store at the Bon Shopping Center in Colorado Springs. Their purpose was to discourage shoppers from shopping at the Safeway grocery store in the shopping center because Safeway marketed non-AFL-CIO union lettuce. Charged with violating City Ordinance 8-36,[1] they were convicted by a jury in the Colorado Springs Municipal Court. The District Court of El Paso County affirmed the conviction, rejecting Petitioners' argument that the ordinance, as applied to their activity, worked a deprivation of their rights as protected by the First and Fourteenth Amendments to the United States Constitution. We granted a writ of certiorari to consider whether Petitioners' activities on private property were protected by the First and Fourteenth Amendments and, if so, whether the convictions can stand. For the reasons

---

[1] 8-36 *Unlawful Use of Property of Another* — It shall be unlawful for any person to use or cause to be used in any manner, the real or personal property of another, or in lawful possession of another, for any purpose, including advertising, storage, grazing or recreation, without the permission of the owner or person in possession thereof.

set forth herein, we reverse the judgment of the District Court.

The central question to be determined in this case is whether a conviction for violation of the local ordinance can be predicated upon peaceful picketing and handbill distribution in front of a business enterprise located within a shopping center when the nature and content of the protest directly relates to the function of the enterprise being picketed, and no other reasonable opportunities are available for conveying the message to the intended audience. Both parties agree that the standards articulated in *Amalgamated Food Employees Union v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 20 L.Ed.2d 603, 88 S.Ct. 1601 (1968), and *Lloyd Corp. v. Tanner,* 407 U.S. 551, 33 L.Ed.2d 131, 92 S.Ct. 2219 (1972), govern the outcome of this case, yet disagree on the proper application of these standards to the facts.

Read together and further clarified by *Central Hardware Co. v. NLRB,* 407 U.S. 539, 33 L.Ed.2d 122, 92 S.Ct. 2238 (1972), these cases set forth a three pronged test to determine when private property may "for First Amendment purposes, be treated as though it were publicly held." *Amalgamated Food Employees Union v. Logan Valley Plaza, Inc.,* 391 U.S. at 316. In *Logan Valley,* the Court relied heavily on *Marsh v. Alabama,* 326 U.S. 501, 90 L.Ed. 265, 66 S.Ct. 276 (1946), in determining that the Logan Valley Shopping Plaza was the functional equivalent of a community business block, and was therefore imbued with public attributes for First Amendment purposes. This analysis was refined in *Lloyd Corp.* where the Court attached two additional criteria: the message sought to be conveyed must be directly related to the purpose to which the property is being put; there must be no other reasonable opportunities available upon public property for conveying the message to the intended audience.

I.

Petitioners argue that the Bon Shopping Center — in both design and function, providing a full range of goods and services — satisfies the first criterion: that it is the functional

equivalent of a community business block. The district court rejected this assertion stating that "the area in which the appellants were arrested was private property and that consent for defendants to use the property for advertising their cause had been withdrawn." Thus, the district court concluded that the property had not "assumed the functional attributes of public property devoted to public use to any degree." We disagree.

It is readily conceded that the Bon Shopping Center property and the Safeway property are privately owned, and the Petitioners' activity upon that property was contrary to the wishes of the management. But that concession alone does not dispose of the First and Fourteenth Amendment problems raised there. In *Logan Valley, supra,* where the shopping center property upon which the picketed store was located was privately owned, the Supreme Court viewed the shopping center as a community business block and held that under such circumstances "the state may not delegate the power through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put." 391 U.S. at 319. In arriving at its conclusion, the Supreme Court described the Logan Valley Plaza as follows:

"Inside the mall were situated, at the time of trial, two substantial commercial enterprises with numerous others soon to follow. Immediately adjacent to the mall are two roads, one of which is a heavily traveled state highway and from both of which lead entrances directly into the mall. Adjoining the buildings in the middle of the mall are sidewalks for the use of pedestrians going to and from their cars and from building to building. In the parking areas, roadways for the use of vehicular traffic entering and leaving the mall are clearly marked out. The general public has unrestricted access to mall property." *Id.* at 318 (footnote omitted).

The physical setting in the present case is strikingly similar.

Situated adjacent to heavily traveled Wahsatch Avenue, the Bon Shopping Center houses eighteen independent stores offering a wide variety of goods and services, much as any ordinary business block.[2] A paved, privately owned parking area surrounds the stores, while walkways also privately owned, connect the various stores allowing shoppers to stroll at their leisure, much as with a typical municipal sidewalk. The intent of the owners of the property was obviously that the shopping center, in both form and function, displace any need one might have to go into downtown areas.

Clearly, the Bon operation is the equivalent of a community business district. Seeking to reconcile the shopping center phenomenon with First Amendment demands, the Supreme Court cogently stated in *Logan Valley:*

"The economic development of the United States in the last 20 years reinforces our opinion of the correctness of the approach taken in Marsh. The large-scale movement of this country's population from the cities to the suburbs has been accompanied by the advent of the suburban shopping center, typically a cluster of individual retail units on a single large privately owned tract. It has been estimated that by the end of 1966 there were between 10,000 and 11,000 shopping centers in the United States and Canada, accounting for approximately 37% of the total retail sales in those two countries.

"These figures illustrate the substantial consequences for workers seeking to challenge substandard working conditions, consumers protesting shoddy or overpriced merchandise, and minority groups seeking nondiscriminatory hiring policies that a contrary decision here would have. Business enterprises located in downtown areas would be subject to on-the-spot public criticism of their practices, but businesses situated in the suburbs could largely immunize themselves from similar

---

[2] Aside from the Safeway Store which is located at the South end of the shopping center, there is an ice cream parlor, bakery, television and appliance store, gift shop, children's shoe store, shoe store, variety store, hardware store, beauty shop, dress shop, sporting goods store, cleaners, restaurant, drug store, department store, and gas station.

criticism by creating a *cordon sanitaire* of parking lots around stores. Neither precedent nor policy compels a result so at variance with the goal of free expression and communication that is the heart of the First Amendment." 391 U.S. at 324, 325.

Respondent asserts that this case is closer to *Central Hardware Co. v. NLRB,* 407 U.S. 359, 33 L.Ed.2d 122, 92 S.Ct. 2238 (1972). Yet, we are more impressed with the distinctions between this case and *Central Hardware* than with the similarities. There, the Court found application of *Logan Valley* to be inappropriate where there was involved only one-free-standing store as opposed to a large shopping center. Here, where there exists no significant difference between the Logan Valley Plaza, and the Bon Shopping Center, we hold that application of Logan Valley is particularly appropriate, and the Bon Shopping Center is the functional equivalent of a community business block.

## II.

Because the district court resolved the threshold inquiry of whether the Bon Shopping Center was the functional equivalent of a community business block against the Petitioners, it did not reach the two further questions posed by *Lloyd Corp. v. Tanner, supra:* namely (1) was the protest directly related to the purpose to which the property is put, and (2) was there a reasonable alternative for the Petitioners to convey their message to the desired audience. Nevertheless, since most of the relevant facts have been stipulated to by the parties, and the non-stipulated facts are undisputed in the record, or conceded by counsel, this court may upon appeal decide those questions as a matter of law. *Gross v. Appelgren,* 171 Colo. 7, 467 P.2d 789 (1970); *Klutts v. Parker,* 158 Colo. 594, 409 P.2d 275 (1966).

Application of the first prong of the *Lloyd* test causes us to focus on the relationship between the content of the protest, and the property that is the subject of the protest. Petitioners assert that since the protest against the sale of non-AFL-CIO union lettuce was aimed specifically at Safeway Stores because of their policy of selling non-AFL-CIO

union lettuce, there can be no more appropriate forum for conducting that protest than the front of the Safeway Store. Respondent counters this argument, pointing out that in *Logan Valley,* the protest was aimed *directly* at the hiring policies of the market being picketed, while in this case, the real grievance of the protestors is against lettuce growers and their hiring policies. The Respondent contends, therefore, that Safeway's connection with the evil sought to be enjoined by the protest is only peripheral. We find Respondent's contention to be without merit.

While the relationship between the message content and the area subject to protest is here somewhat less direct than in *Logan Valley,* it is nonetheless clear that the message does relate to one of the purposes to which the property is put — the sale of produce. Furthermore, it is not only the lettuce growers whose activity the protesters found objectionable, but by urging a boycott of the Safeway store for marketing the lettuce, Safeway's conduct was also under attack.

██ Although we know of no yardstick by which we can determine when a very close relationship becomes a direct relationship, we need only scrutinize this case in conjunction with *Lloyd Corp. v. Tanner, supra* to appreciate the close relationship between the message of Petitioner's protest, and the forum chosen. In *Lloyd,* the Respondents were distributing anti-war leaflets in the Lloyd Center. Since the content of the handbilling had virtually no connection with the function of the shopping center, the court observed that this was not a particularly appropriate forum for handbill distribution. The court stated:

"The message sought to be conveyed by respondents was directed to all members of the public, not solely to patrons of Lloyd Center or any of its operations. Respondents could have distributed these handbills on any public street, on any public sidewalk, in any public park, or in any public building in the city of Portland." 407 U.S. at 564.

Here we have a different case. Here, it was specifically the prospective patrons of Safeway to whom the protest was directed. It makes no difference that the ultimate cause of

the boycott was engendered by produce growers, since it was Safeway's activity of marketing the non-AFL-CIO union lettuce that was being complained of. Therefore, we find that the message sought to be conveyed directly related to the purpose to which the Safeway property was put.

III.

Closely related to the question of whether the content of the protest relates to the function of the property on which the protest is being conducted, is the second inquiry set forth in *Lloyd:* Are there other reasonable opportunities for conveying the message to the intended audience?

■ Petitioners maintain that the physical setting of the Bon Shopping Center offered them no other reasonable alternatives to convey their message. Respondent counters this contention, pointing out the proximity of public property to the Safeway store and the feasibility of Petitioners locating their activity there. A review of the record, and the stipulated facts leads us to the conclusion that the physical setting did not offer Petitioners a reasonable alternative for conveying their message from public property.

The Safeway store sits on free-standing property located at the south end of the Bon Shopping Center. Between the store and public property there is a six-foot sidewalk and 115-foot wide parking area, both owned by Safeway. Beyond the parking lot is a twenty-four-foot wide strip of publicly-owned property which separates the parking area from Wahsatch Avenue. The strip of publicly-owned land consists of a 15-foot wide portion of asphalt next to the curb of Wahsatch Avenue, a six-foot wide public sidewalk, and another asphalt strip 3 feet wide between the sidewalk and the Safeway parking lot. There are two driveways allowing the entrance and exit of automobiles onto the property, and both entrances are used by patrons of other stores in the shopping center as well as by the patrons of Safeway. Vehicles coming into the parking lot are not required to stop, and such vehicles customarily remain in motion until parked in a parking space. Approximately 90% of the shopping center customers enter the parking lot in automobiles, while ten percent enter the property on foot.

With these physical facts of the Bon Shopping Center in mind, it is well to point out again the nature of the activity that Petitioners were engaged in — handbill distribution and display of picket signs. While picket signs displayed from this publicly-owned strip of land could perhaps be read by passengers of automobiles entering the parking area, it is clear that if restricted to this area, handbill distribution would be confined to persons who enter the shopping center on foot (10% who enter the shopping center), or to those persons in vehicles that stop at the entrance to the parking lot to receive the handbill. [An unlikely occurrence in light of the fact that there is no stop sign at the entrance to the Bon Shopping Center, and cars coming off of Wahsatch Avenue (30 m.p.h. speed limit) continue in motion until they arrive at a parking place.] Furthermore, since the entrances are used commonly by all automobiles entering the shopping center, there is no way of knowing which ones are destined for the Safeway Store.

Moreover, as pointed out in *Logan Valley:*

"[T]he task of distributing handbills to persons in moving automobiles is vastly greater (and more hazardous) than it would be were petitioners permitted to pass them out within the mall to pedestrians." 391 U.S. at 322.

Respondent likens the physical situation in *Lloyd Corp. v. Tanner, supra* to the physical surroundings involved here. We do not agree. In our view, the physical realities are more akin to those in *Logan Valley,* and demonstrate that there was no reasonable alternative upon public property for the course pursued by Petitioners on the shopping center property.

We need not pause to consider under what circumstances and in what manner picketing and handbill distribution at a shopping center could be punished under the above-cited city ordinance. The facts of this case reveal that Petitioners were engaged in peaceful activities, causing no significant interference with the functioning of the shopping center. Under such circumstances, they could not, consistent with the constitution, be convicted of violating the ordinance. This is not to say that the Respondent, and the shopping center cannot impose reasonable regulations govern-

ing the exercise of First Amendment rights on their property. *See Amalgamated Food Employees Union v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 20 L.Ed.2d 603, 88 S.Ct. 1601 (1968); *Adderly v. Florida,* 385 U.S. 39, 17 L.Ed.2d 149, 87 S.Ct. 242 (1966); *Poulos v. New Hampshire,* 345 U.S. 395, 97 L.Ed. 1105, 73 S.Ct. 760 (1953); *Cox v. New Hampshire,* 312 U.S. 569, 85 L.Ed. 1049, 61 S.Ct. 762 (1941).

▌ What we do say, however, is that the Bon Shopping Center is the functional equivalent of a community business block; that the Petitioners were engaged in speech and speech related activities which directly related to the normal function of the property on which they conducted their activity; and that there were no other reasonable opportunities available upon public property for conveying their message to the intended audience. As a result, Petitioners' activity was within the ambit of protection provided by the First and Fourteenth Amendments to the United States Constitution, and therefore, the judgment of the district court is reversed and Petitioners are ordered discharged.

MR. JUSTICE GROVES dissents.

MR. JUSTICE GROVES dissenting:

I have no trouble with the majority holding that the shopping center is a functional equivalent of a community business block. Neither do I have any problem with the majority ruling that there are not other reasonable opportunities for conveying the message to the intended audience. I would have less trouble if this were non-union lettuce. It is *union* lettuce, but the union involved is not that one favored by the protestors. Safeway is caught in the middle of a dispute between two unions out in California. In such a situation I would hold that this protest does not relate to the function of the property.